

# THE ATTORNEY GENERAL
## OF TEXAS

January 14, 1988

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Lloyd Criss
Chairman
Committee on Labor and
   Employee Relations
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-844

Re:    Whether a door prize
may be awarded during an
intermission between bingo
games (RQ-1293)

Dear Representative Criss:

You ask about the construction of the following
provision, which was added to the Bingo Enabling Act,
article 179d, V.T.C.S., by the 70th Legislature:

> A licensed authorized organization or
> other person may not award or offer to award
> a door prize or other prize to persons
> present at a bingo occasion or participating
> in a bingo occasion in addition to the
> prizes awarded for winning the individual
> bingo games.

Acts 1987, 70th Leg., ch. 478, §3, at 4160 (to be codified
as art. 179d, §11(q)).

You are concerned that the prohibition on door prizes
has been misinterpreted. Consequently, you ask this
office to clarify the term "bingo occasion." You also ask
whether the prohibition on door prizes applies during the
thirty-minute intermission required by section 18 of
article 179d.

The prohibition on door prizes applies to persons
present at or participating in a "bingo occasion." The
Bingo Enabling Act does not define "bingo occasion," but
the phrase does appear several times in the act. Section
11(f) provides in part: "A series of prizes offered or
awarded on any one bingo occasion . . . may not aggregate
more than $2,500." Section 11(k) provides: "A game of

chance other than bingo may not be conducted or allowed during an occasion when bingo is played." Section 11(p) provides in part: "A licensed authorized organization may not include in an advertisement or promotion the amount of a prize or series of prizes offered at a bingo occasion." Section 18 provides:

> A game of bingo may not be conducted under any license issued under this Act more often than three days per calendar week, not to exceed four hours per 24-hour period. Only one bingo occasion per day may be conducted under each license issued under this Act. No more than two organizations may conduct a game of bingo in one place on one day. If two organizations conduct games of bingo in one place on one day, these occasions must be announced separately, and an intermission of at least 30 minutes must occur between the games. A game conducted under a temporary license may not be conducted in violation of this section.

The provisions in article 179d that use the phrase "bingo occasion" indicate that a "bingo occasion" is a gathering for the purpose of playing bingo games and that the time of a bingo "occasion" includes times before, during, between, and after the actual bingo games. See generally Harrison v. Arrow Metal Products Corporation, 174 N.W. 2d 875, 885 (Mich. Ct. App. 1969) ("occasion" of a libel refers to time, place, and people). Our interpretation of the phrase "bingo occasion" is consistent with the Comptroller's definition of "bingo occasion" as a "single gathering or session at which a series of successive bingo games are played." 34 T.A.C. §3.544. We conclude, therefore, the time covered by the phrase "bingo occasion" in article 179d, V.T.C.S., includes the time during which people are gathered for the purpose of playing bingo, including times before, during, between, and after bingo games.

Your second question is whether the prohibition on door prizes applies during the thirty-minute intermission required by section 18:

> If two organizations conduct games of
> bingo in one place on one day, these
> occasions must be announced separately, and
> an intermission of at least 30 minutes must
> occur between the games.

It has been suggested that the thirty-minute intermission required by section 18 is not part of any bingo "occasion" and therefore that section 11(q) does not prohibit the offering or awarding of a door prize during that thirty-minute intermission. We think that suggestion arises from a misunderstanding of the difference between a "game" and an "occasion."

Section 18 refers to the events conducted under different licenses as "separate occasions," but it requires a thirty-minute intermission between "games." The fact that thirty minutes must separate the "games" in one occasion from games in another occasion does not mean that thirty minutes must separate the "occasions." Again, "occasion" refers to a gathering for the purpose of playing bingo and it encompasses more than just the time actually spent playing bingo. The question of when any particular "occasion" begins and ends is a question of fact. It seems likely, though, that two "occasions" would overlap if they were conducted in the same place on the same day and if the last bingo game of one occasion were separated from the first bingo game of the other occasion by only half an hour. Thus, the thirty-minute hiatus in game-playing is likely to be part of at least one of the bingo occasions, if not both. In such circumstances, section 11(q) would prohibit the offering or awarding of a door prize.

It has been suggested that the practice of awarding door prizes during times when bingo is not actually being played is acceptable under an emergency rule adopted by the Comptroller. 34 T.A.C. §3.562. See 12 Tex. Reg. 3632 (October 9, 1987). The Comptroller's explanation of the rule in question states, "The rule prohibits the offering or awarding of any prize by any person during a bingo occasion except for prizes for winning individual bingo games." Id. That statement comports with our reading of the statute. The relevant part of the rule, however, states:

> Extra prizes prohibited. No authorized organization, lessor, or other person, may offer or award any prize to any person or persons present at a bingo occasion or participating in a bingo occasion other than, or in addition to, the prizes awarded for winning the individual bingo games. This prohibition extends to the offering or awarding of a prize or prizes, other than prizes for winning bingo games authorized under the Bingo Enabling Act during an organization's licensed times, and <u>includes any activity during licensed times in connection with the offering or awarding of such prizes</u>, such as the handing out of tickets, the written or oral promotion of the additional prize, the drawing of a name or names, or the awarding of a prize. (Emphasis added.)

34 T.A.C. §3.562(b). The emergency rule also defines "present at a bingo occasion and participating in a bingo game" as being "present at or participating in any activity at the bingo location during licensed times of a bingo occasion." 34 T.A.C. §3.562(a)(2).

The rule states that the prohibition on door prizes includes "any activity <u>during licensed times</u> in connection with the offering or awarding of [door] prizes." (Emphasis added.) Neither the statute nor the rules define "licensed times." <u>See</u> art. 179d, §18 (bingo game may not exceed four hours in a 24-hour period); <u>see also</u> art. 179d, §12d. However, the phrase "during licensed times of a bingo occasion" suggests that "licensed times" is intended to be less inclusive than the phrase "bingo occasion" and that the Comptroller considers there to be "unlicensed times" during a "bingo occasion." Therefore, it has been suggested that the Comptroller's rule would allow door prizes to be offered or awarded during "unlicensed times" of bingo occasions. We think that the Comptroller's rule is ambiguous, but if the rule is interpreted to mean that door prizes may be awarded at any time during a "bingo occasion," it would be invalid.

## S U M M A R Y

The word "occasion" in article 179d, V.T.C.S., means a gathering for the purpose of playing bingo. The time of a bingo occasion includes times before, during, between, and after bingo games. The thirty-minute intermission between "games" required by section 18 of article 179d, V.T.C.S., does not necessarily create an intermission between "occasions."

Very truly yours,

J I M    M A T T O X
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General